Caldwell, Ch.
On calling this case on the docket at Abbe-ville Hourt House, at June Term, 1848, and after hearing affidavits on both sides relating to the residence and domicil of the defendant, the circuit Chancellor made the following order. “It appearing to the Court the defendant does not reside in Abbeville district, but that his residence is in Charleston district, it is ordered, that the bill and all the papers connected therewith, which are filed in the office of the Commissioner of Abbeville district, including the testimony taken before the Commissioner, be transferred to the office of the Register in Equity for Chancellor district, and that the case be docketed for trial in the said Charleston district.” From this order the plaintiff appealed, upon the following grounds. “1. Because, the affidavit submitted shewed that the defendant’s residence in Abbeville district was his domicil. 2. Because causes of equitable cognizance are to be tried where the subject matter of litigation lies; and the jurisdiction of the Court does not depend upon the domicil of the parties. 3. Because, by the notice served upon the complainant, the defendant acknowledged himself a party in Court.”
The first Act in relation to the Court of Chancery, after the change in this country from a proprietary to a provincial government, was passed in 1721, and all causes in this Court Avere by its provision to be heard in Charlestown ; this continued to be the case during the whole peried of the Royal *325 government. The constitutions of 26th March, 1776, and of the 19th March, 1778, made no change as to the place where the Court of Chancery should be held; the former vested its powers in the Yice President of the Colony and a majority of the Privy Council, and the latter provided that the Lieut. Governor and a majority of the Privy Council for the time being, should, until otherwise altered by the Legislature, ex-,, ercise the powers of a Court of Chancery. After the Revolution, the Act of 1784 re-established a Court of Chancery consisting of three Judges, who were required to hold the Court at stated terms, for the full and solemn, hearing of causes, at the place where the Courts of Common Pleas are usually held in Charleston. The Act further provided that “the sheriff of the district in which the party against whom any process of the said Court issues, resides, or the estate to be affected thereby, lies, shall execute and make a proper return of all such process, writs of subpoena only excepted.”
1 Stat. 128, 142. 7 Stat. 209. sec. 8.
Id. sec. 11.
1 Stat. 189, Art. 3a.
7Btati 258-
Id. 283 sec. 5.
The constitution of this State, adopted on the 3d of June, 1790, introduced a new system; and provided that “the judicial power shall be vested in such superior and inferior Courts of Law and Equity, as the Legislature shall from time to time direct and establish.” Accordingly the Legislature, in 1791, enacted that “it was expedient that a Court of Equity, with adequate powers, be established in this State, and that the laws now of force for establishing and regulating the Court of Chancery within this State, be, and they are hereby declared to be, and continue, of force, in this State, until altered or repealed by the Legislsture thereof, subject nevertheless to such alterations, amendments and restrictions as are herein after directed.” And as great inconveniences had been experienced in the remote parts of the State, on account of the Court of Chancery having been hitherto held in one part of the State only, in remedy thereof the Act provided “that all future sittings of the Court of Equity, for the full and solemn hearing of causes, shall be held at the times and places herein-after directed,” &c. and after designating Columbia and Cambridge as the two other additional places where the Courts were to be held, it says, “and at Charleston for all causes wherein the defendant shall reside in either of the districts of Charleston, Beaufort or Georgetown, on the second Monday in March, the second Monday in June, and the second Monday in September,” &c. The Act of 1793 remedied the omissions of the Act of 1791, in cases where there were several defendants residing in different district, or a greater number, or an equal number, residing in different districts, by providing that “the complainant shall commence and pursue his proceedings in that Court which takes cognizance over the districts in which the greatest number of defendants shall reside; but when an equal num *326 ber of the defendants reside in districts ranged under different Courts, the complainant may elect in which of such Courts will commence his proceeding; and the Judges of the sa¡¿ Court of Equity shall or may make all proper and necessary rules for carrying the intention of this clause into effect.”
The subsequent Acts organizing the Courts of Equity, modifying its powers, prescribing its practice, or arranging its circuits, do not affect these provisions of the Acts of 1791 and 1793. Although this is a Court of general jurisdiction, it is clear that the rights of defendants are reserved under the provisions of these Acts.
The first question submitted by the appeal is one of fact: all the affidavits that were read before the circuit Chancellor have not, (as they ought to have been) brought before us, but the vague statements of three presented on the part of the plaintiff, and the admission by his counsel of what was sworn to in the affidavits of the defendant and his overseer, make it clear, that the defendant’s family (consisting of his wife and children) resided permanently in Charleston, where they had lived for several years ; and that although he occasionally visted Abbeville district, where he owned a plantation and had a comfortable house, yet it could not be considered as his domicil.
It is a rule that has often been reiterated, that on a question of fact, the circuit decree will be sustained, unless the Chancellor was mistaken. Here we think the proof establishes his conclusion.
The extension that the various Acts of the Legislature have given as to places where the Courts of Equity are to be holden, would be of little benefit to defendants if the plaintiffs could ad libitem file their bills in any district in the State, and compel defendants to have the case tried where they did not reside; the objects of these Acts would be defeated.
While it is incumbent on this Court to protect the rights of defendants, it is clearly within its power to prescribe such rules as will carry out the intention of these Acts. Although we are not prepared to say that a defendant may not make this objection in his answer, where he resides in a different district from that in which the bill has been filed and he has been served, yet it would seem reasonable that he should apprise the plaintiff, as early as he could conveniently, of his intention to make a motion to transfer the case. While there is no rule of practice that requires this question to be presented by a plea in abatement, it is but just that the plaintiff should not be taken by surprise; after having incured trouble and expense in preparing for trial, subpcenaing witnesses, and attending in person, and when the defendant had given no *327 notice of his wish to remove the cause to the district where he resided, the plaintiff would have strong claims to have his case heard, and under such circumstances, a capricious objection on the part of the defendant would not be sustained. Bm in this case the defendant has stated such circumstances as furnish very satisfactory reasons for his motion; that from conversation with the Solicitor on record of the plaintiff, he was led to believe the cause would by agreement be tried in Charleston, and that under this impression, he prepared his answer and exhibited it to the said Solicitor, and that “he was and has been always ready to proceed to trial in the said City.”
T. ThompsoN, for the motion.
Perrin and M’Gowan, contra.
There was nothing in the notice referred to in the third ground by which the defendant waived his right to make this motion : the object of the motion was to enable him to offer in evidence an office copy of a deed at the trial; and as he appears not to have taken the plaintiff by surprise, but to have acted towards him with fairness in preparing for a hearing of the cause at his place of residence, he is entitled to have it removed to the district of Charleston. It is therefore ordered and decreed that the appeal be dismissed, and the circuit order be confirmed.
The whole Court concurred.

Order confirmed.